# United States Court of Appeals
# for the Federal Circuit

---

**CBT FLINT PARTNERS, LLC,**
*Plaintiff-Appellant,*

**v.**

**RETURN PATH, INC.,**
*Defendant-Cross Appellant,*

**and**

**CISCO IRONPORT SYSTEMS, LLC,**
*Defendant-Cross Appellant.*

---

2010-1202, -1203

---

Appeal from the United States District Court for the Northern District of Georgia in Case No. 07-CV-1822, Judge Thomas W. Thrash, Jr.

---

Decided: August 10, 2011

---

DARYL L. JOSEFFER, King & Spalding LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were BRUCE W. BABER, ALAN SHANE NICHOLS and NATASHA H. MOFFITT, of Atlanta, Georgia.

LOUIS NORWOOD JAMESON, Duane Morris, LLP, of Atlanta, Georgia, argued for defendants-cross appellants.

With him on the brief were MATTHEW C. GAUDET and LEAH J. POYNTER. Of counsel on the brief was KENNETH L. BRESSLER, Blank Rome LLP, of New York, New York.

---

Before LOURIE, BRYSON, and LINN, *Circuit Judges*.

LOURIE, *Circuit Judge*.

CBT Flint Partners, LLC ("CBT") appeals from the final judgment of the United States District Court for the Northern District of Georgia. The court granted summary judgment of invalidity of claim 13 of U.S. Patent 6,587,550 ("the '550 patent"), holding it indefinite under 35 U.S.C. § 112, ¶ 2. *CBT Flint Partners, LLC. v. Return Path, Inc.*, No. 1:07-CV-1822, Dkt. No. 203 (N.D. Ga. July 11, 2008) ("*Summary Judgment Op.*"). The district court then denied defendants Cisco Ironport Systems, LLC and Return Path, Inc.'s ("Cisco's") request for attorney fees but awarded Cisco costs, including e-discovery costs, under 28 U.S.C. § 1920. CBT also appeals the district court's decision to award e-discovery costs to Cisco, and Cisco cross-appeals the district court's denial of its request for attorney fees. Because we conclude that the district court had authority to correct the supposed error found in claim 13 of the '550 patent, we reverse the district court's summary judgment of invalidity. We construe that claim according to its clear and apparent meaning, and remand to the district court for further proceedings. We also vacate the district court's orders on costs and deny the cross-appeal.

## BACKGROUND

CBT owns the '550 patent as well as U.S. Patent 6,192,114 (the "'114 patent"), both relating to methods and systems for charging a fee for sending unsolicited and unwanted e-mail, generally known as "spam," to e-mail

recipients.    Figure 1 of the '550 patent illustrates a network on which the patented system may be employed.



## Fig. 1

In the preferred embodiment, the invention is implemented as part of the Internet Service Provider ("ISP"). When a sending party (1) sends a spam message to an intended receiving party (8), the patented system in the ISP (5) determines whether the sender of the e-mail is an authorized sending party, *i.e.*, someone who has agreed to pay a fee in return for allowing its spam e-mail to be forwarded over the network, and, if authorized, will forward the spam e-mail to the receiving party.  On the other hand, if the sending party is not an authorized party, the system sends a message to the sending party with an option to pay a fee and have the spam message forwarded to the recipient.  Claim 13 of the '550 patent, the only claim at issue in this appeal, is reproduced below:

> 13.    An apparatus for determining whether a sending party sending an electronic mail communication directed to an intended receiving party is an authorized sending party, the apparatus comprising:
>
> a computer in communication with a network, the computer being programmed to *detect analyze* the

electronic mail communication sent by the sending party to determine whether or not the sending party is an authorized sending party or an unauthorized sending party, and wherein authorized sending parties are parties for whom an agreement to pay an advertising fee in return for allowing an electronic mail communication sent by the sending party to be forwarded over the network to an electronic mail address associated with the intended receiving party has been made.

'550 patent claim 13 (emphasis added).

In August 2007, CBT sued Cisco and Return Path in the Northern District of Georgia, alleging infringement of the '550 and '114 patents by use of their "Bonded Sender" system. The accused system was developed by Cisco, but later sold to Return Path. CBT asserted ten claims of the '114 patent and claim 13 of the '550 patent. The accused system analyzes each incoming e-mail message to determine whether the e-mail came from an authorized computer, and, if so, forwards it. The accused system does not have any mechanism to allow e-mail from unauthorized computers to be forwarded to the recipient if the unauthorized sending party is willing to pay a fee.

The court issued a claim construction order on July 10, 2008, *CBT Flint Partners, LLC. v. Return Path, Inc.*, No. 1:07-CV-1822, Dkt. No. 202 (N.D. Ga. July 10, 2008), and the next day, it granted summary judgment of invalidity of claim 13 of the '550 patent. The district court agreed with the parties that claim 13 contained a "drafting error" where the claim recites "the computer being programmed to *detect analyze* the electronic mail communication." *Summary Judgment Op.* at 3. The court determined that there were at least three reasonable and possible corrections to rectify that drafting error: (1)

delete the word "detect," (2) delete the word "analyze," or (3) add the word "and" between the words "detect" and "analyze." *Id.* at 4. The court held that on consideration of the claim language and specification, the appropriate correction is subject to reasonable debate. *Id.* It noted that one of the inventors, who had also prosecuted the '550 patent application at the United States Patent and Trademark Office ("PTO"), himself testified that he could have meant to draft the claim in any one of the three ways listed. *Id.* The district court therefore concluded that, under our holding in *Novo Industries L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003), it was not authorized to correct the so-called drafting error in claim 13, thereby rendering it invalid for indefiniteness. *Id.* at 5.

Following the court's claim construction, the parties stipulated to noninfringement of all asserted claims of the '114 patent, and the court entered final judgment based on the parties' stipulation as well as its finding of invalidity of claim 13 of the '550 patent. *CBT Flint Partners, LLC. v. Return Path, Inc.*, No. 1:07-CV-1822, Dkt. No. 219 (N.D. Ga. Oct. 8, 2008).

Cisco moved for a finding of an exceptional case and an award of attorney fees. Cisco also submitted its bill of costs. In December 2008, the court awarded Cisco costs, including e-discovery costs, but denied Cisco's motion for declaration of an exceptional case and its request for attorney fees. *CBT Flint Partners, LLC. v. Return Path, Inc.*, No. 1:07-CV-1822, Dkt. No. 258 (N.D. Ga. Dec. 30, 2009).

In denying Cisco's motion for a ruling that this was an exceptional case, the district court held that although CBT had exercised poor legal judgment in pursuing the action, there was no clear and convincing evidence that

the pre-filing investigation "was so pathetic as [to] justify an inference of [subjective] bad faith." *Id.* at 6. It also noted instances of CBT's litigation misconduct, for which the court had previously sanctioned CBT, and found CBT's claim to be "objectively baseless." *Id.* at 8-9. However, the court held that CBT's actions had only demonstrated "stubborn recklessness" and not the subjective bad faith that the district court believed was required under our case law for a finding of an exceptional case. *Id.* at 8-9 (citing *Brooks Furniture Mfg., lnc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)).

The district court granted Cisco costs under 28 U.S.C. § 1920, including e-discovery costs related to collecting, searching, identifying, and producing electronic documents from IronPort's computers in response to CBT's discovery requests. It determined that those services "are the 21st Century equivalent of making copies," and constitute recoverable costs. *Id.* at 11.

CBT now appeals the district court's summary judgment of invalidity of claim 13 of the '550 patent and the court's award of costs to Cisco. It does not appeal the court's claim construction of the '114 patent that resulted in the stipulated judgment of noninfringement of that patent. Cisco cross-appeals the district court's denial of its motion for designation as an exceptional case and attorney fees. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

CBT argues that the district court focused on the wrong question regarding indefiniteness in determining whether there are multiple reasonable corrections that can be made to the claim. Instead, CBT argues, the question that determines indefiniteness is whether the claim would have the same meaning under all reasonable formulations, such that the public was on clear notice of the claim's scope. CBT contends that the meaning and scope of claim 13 remains the same regardless which correction is adopted. It contends that all three possible corrections require the system to "detect and analyze" an e-mail so as to "determine whether or not the sending party is an authorized sending party." And even if the district court's approach was correct, CBT continues, there is only one reasonable correction in the context of the claim and specification, *viz.*, the addition of the word "and" between the words "detect" and "analyze." According to CBT, that is so because both detection and analysis of an e-mail are necessary "to determine whether or not the sending party is an authorized sending party or an unauthorized sending party." CBT further argues that the district court erred in relying primarily on inventor testimony to invalidate an issued claim—a practice that, according to CBT, this court has previously rejected.

Cisco responds that the district court correctly concluded that under *Novo Industries*, it lacked statutory authority to correct an error in claim 13, given that at least three possible corrections seemed reasonable. It argues that our holding in that case makes it clear that if there is a debate about the correction, then only the PTO can make that change. Cisco contends that CBT's inconsistent arguments on appeal—that one correction is more

reasonable than the other two, while all three have the same meaning—demonstrate that multiple reasonable corrections are possible and that the court properly rejected CBT's invitation to randomly select one of the three. According to Cisco, claim construction must take place only after any correction of the claim, and the district court did not have the authority to make such a correction here. Thus, Cisco contends, it would be inappropriate for a court to construe claim scope in determining an appropriate correction. Even if the court were entitled to look to claim scope, Cisco argues, a change in language necessarily results in a different claim scope; each of the three possible corrections covers distinct subject matter, thereby barring the district court and this court from selecting any one correction over the other two.

We agree with CBT that claim 13 of the '550 patent is not indefinite, and we do so ultimately by holding that there is an obvious and correctable error in the claim, the construction of which is not subject to reasonable debate. Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995) (en banc), which we review *de novo*, *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) (en banc). Although the claims of a patent define the invention that the patentee is entitled to exclude others from practicing, we must read the claims "in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-15 (Fed. Cir. 2005) (en banc). If the court determines that a claim is not "amenable to construction," then the claim is invalid as indefinite under 35 U.S.C. § 112, ¶ 2. *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)).

It is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim. *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 442 (1926) ("*Essex*"). In *Novo Industries*, we held that "[a] district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." 350 F.3d at 1357. We concluded that the enactment of 35 U.S.C. §§ 254 and 255 did not overrule *Essex* or deny authority to the district courts to correct a claim in appropriate circumstances. *Id.* at 1356. In *Novo Industries*, we declined to make the proposed corrections to the claim at issue because those corrections were substantively significant and required guesswork as to what was intended by the patentee in order to make sense of the patent claim. *Id.* at 1357.

More recently, on the other hand, in *Ultimax Cement Manufacturing Corp. v. CTS Cement Manufacturing Corp.*, we found authority for the district court to correct a claim by adding a comma between the symbols for fluorine and chlorine. 587 F.3d 1339, 1353 (Fed. Cir. 2009). We concluded that one of ordinary skill in the art would know that the formula should contain a comma. *Id.* Thus, we emphasized that in deciding whether it had authority to correct a claim, a district court must consider any proposed correction "from the point of view of one skilled in the art." *Id.*

Accordingly, we first conclude that the district court erred in this case by holding that it was not authorized to "correct" the supposed "detect analyze" error in claim 13 of the '550 patent. Although the district court found that there are "at least three alternatives that appear to be equally reasonable," *Summary Judgment Op.* at 4, as in *Ultimax*, the court here failed to consider those alterna-

tives from the point of view of one skilled in the art. Specifically, the district court failed to recognize that the claim contained an obvious error, which is confirmed by the fact that a person of skill in the art would find the claim to have the same scope and meaning under each of the three possible meanings that the court found reasonable. We conclude that it does, and therefore that the district court had the requisite authority to make a correction to claim 13 of the '550 patent. In doing so, we reject Cisco's argument that correction of a claim must precede claim construction. Any correction of a claim has to be consistent with the invention "described in the specification and drawings of the original patent." *Essex*, 272 U.S. at 444; *see also Ultimax*, 587 F.3d at 1353 ("Claim definiteness is analyzed not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art."). A court therefore must consider how a potential correction would impact the scope of a claim and if the inventor is entitled to the resulting claim scope based on the written description of the patent.

The disputed phrase of claim 13 reads: "the computer being programmed to detect analyze the electronic mail communication sent by the sending party to determine whether or not the sending party is an authorized sending party or an unauthorized sending party." '550 patent claim 13. We will parse that phrase in light of the three possible meanings considered by the district court and then construe the contested language. First, if the word "detect" were deleted—the district court's first reasonable and possible interpretation—the claim would require that the computer be programmed to analyze the e-mail. In order to analyze an e-mail, the system would necessarily have to first detect the e-mail. Thus, the scope of claim

13, if construed or corrected in this manner, would require that an e-mail be detected and analyzed.

The second reasonable and possible interpretation that the district court considered was to delete the word "analyze." That would require that the computer be programmed to detect the e-mail, and then "determine whether or not the sending party is an authorized sending party or an unauthorized sending party." But that determining step must include some form of analysis of the e-mail. Merely detecting an e-mail does not determine whether the user is an authorized sending party. The specification explains that "the ISP server analyzes the destination address and source address to determine whether the source address is on a list of authorized source addresses associated with the destination address." '550 patent col.2 ll.41-44. Therefore, even under that interpretation, the scope of claim 13 would require that an e-mail be detected and analyzed.

The final reasonable and possible meaning that the district court considered was to add the word "and" between the words "detect" and "analyze." The addition of the word "and" corrects an obvious error. The appropriateness of that correction is confirmed by the fact that the specification indicates that is the proper meaning of the claim. It also results in the same claim scope as for the first two possible interpretations, requiring that the computer be programmed to detect an e-mail and to analyze it in order to determine whether the sender is authorized. This interpretation explicitly reflects the reasonable scope of the claim. Because each of the three proposed reasonable interpretations would result in the same claim scope, requiring that the computer be programmed to "detect and analyze" the e-mail, a person of skill in the art would readily know that the meaning of the claim requires insertion of the word "and" between the

words "detect" and "analyze." Moreover, there is sufficient support in the specification for such a reading of the claim. A portion of figure 2 of the '550 patent, which demonstrates the method of the claimed invention, is reproduced below:



**Fig. 2**

As can be seen, in the disclosed embodiment, the server first performs the step of decoding the e-mail addresses of sending and receiving parties. That step necessarily detects the e-mail message. In the next step, one of analysis, it compares the e-mail address to the authorized list available. Likewise, the written description supports a two-step "detect and analyze" reading of claim 13. *See* '550 patent col.4 ll.8-14 (stating that the computer de-

codes the datagram and then compares the source address with the authorized sender list).

Thus, the district court was not required to guess which meaning was intended in order to make sense out of the patent claim, nor is one of skill in the art. *Novo*, 350 F.3d at 1357; *see also Essex*, 272 U.S. at 443 ("This is not in any real sense, a re-making of the claim; but is merely giving to it the meaning which was intended by the applicant and understood by the examiner.").

The district court erred in its heavy reliance on one portion of inventor testimony. Daniel Santos, who prosecuted the '550 patent and is also a co-inventor on the '550 patent, testified that he was not sure what he meant by the claim language "detect analyze." That led the district court to decide that the appropriate meaning of claim 13 was subject to reasonable debate. *Summary Judgment Op.* at 4 ("If the inventor and lawyer who drafted the patent is left to guess at what he meant, the Court is certainly in no better position."). Although we agree that the testimony of a person of skill in the art may be relevant to a court's decision on the meaning of a claim, *Ultimax*, 587 F.3d at 1352-53, we do not agree with the district court's interpretation of Santos's testimony. Santos's confused statements that the district court relied on merely related to his recollection of how he intended to draft the claim. Moreover, the court ignored Santos's testimony that the meaning of claim 13 would be the same under any of the three proposed interpretations, and that detection as well as analysis are both necessary to determine whether the sending party was authorized. J.A. 439. We therefore conclude that Santos's testimony supports CBT's proposed reading of claim 13, requiring that the computer be programmed to "detect and analyze" the e-mail.

We accordingly reverse the district court's summary judgment of invalidity of claim 13 of the '550 patent. In light of our disposition, Cisco was not a prevailing party and we therefore vacate the district court's rulings on costs and we deny the cross-appeal. We remand to the district court for further proceedings consistent with this opinion.

CONCLUSION

We have considered Cisco's remaining arguments and do not find them persuasive. Accordingly, the judgment of the district court is

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

COSTS

Costs to CBT.