# United States Court of Appeals for the Federal Circuit

---

**PAVO SOLUTIONS LLC,**
*Plaintiff-Appellee*

**v.**

**KINGSTON TECHNOLOGY COMPANY, INC.,**
*Defendant-Appellant*

---

2021-1834

---

Appeal from the United States District Court for the Central District of California in No. 8:14-cv-01352-JLS-KES, Judge Josephine L. Staton.

---

Decided: June 3, 2022

---

BENJAMIN T. WANG, Russ August & Kabat, Los Angeles, CA, argued for plaintiff-appellee. Also represented by JACOB BUCZKO, MINNA CHAN, MARC A. FENSTER, ADAM HOFFMAN, ANDREW D. WEISS.

MICHAEL JOHN BALLANCO, Fish & Richardson PC, Washington, DC, argued for defendant-appellant. Also represented by BRIANNA LEE CHAMBERLIN, Minneapolis, MN; DAVID M. HOFFMAN, Austin, TX.

---

Before LOURIE, PROST, and CHEN, *Circuit Judges.*

PROST, *Circuit Judge.*

Kingston Technology Company, Inc. ("Kingston") appeals the U.S. District Court for the Central District of California's judgment that Kingston willfully infringed claims 1, 4, and 24 of U.S. Patent No. 6,926,544 ("the '544 patent") and awarding $7,515,327.40 in compensatory damages, enhanced by 50 percent.  We affirm.

## BACKGROUND

## I

The '544 patent is generally directed to "[a] flash memory apparatus having a single body type rotary cover." '544 patent Abstract.  According to the patent, flash memory devices use covers to protect USB ports from damage and foreign substances.  Because prior-art covers were separable from the flash memory apparatus, they could often be lost, or the joint between the cover and the device could loosen and damage the USB port.  The '544 patent purports to solve these problems using a "cover [that] is not completely separated from the main body during use." *Id.* at col. 2 ll. 23–27.  The patent describes a device in which a flash memory apparatus "includes a flash memory main body." *Id.* at col. 3 ll. 11–14.  The flash memory main body has a case with a "hinge protuberance." *Id.* at col. 3 ll. 20–23.  A cover is formed as a U-shaped cavity with a circular hinge hole on one end for receiving the hinge protuberance on the case.  Open sides in the cover allow "the flash memory main body . . . to go in and out of the cover." *Id.* at col. 3 ll. 55–58.  Figure 2 of the '544 patent most clearly illustrates these features and the cooperation between the flash memory main body 30 and the cover 40:

PAVO SOLUTIONS LLC v.                                    3
KINGSTON TECHNOLOGY COMPANY, INC.

[FIG. 2]



Claim 1 is illustrative of the issues on appeal and recites:

A flash memory apparatus comprising:

a flash memory main body including a rectangular shaped case within which a memory element is mounted, a[] USB (Universal Serial Bus) terminal piece electrically connected with the memory element and installed at a front end of the case in a projecting manner, and a hinge protuberance formed on at least one side of the case; and

a cover including [a] pair of parallel plate members facing each other and spaced by an interval corresponding to the thickness of the case, the cover having an open front end and a closed rear end with a pair of lateral side openings; the parallel plate members having at least one hinge hole receiving the hinge protuberance on the case *for pivoting the case with respect to the flash memory main body*, whereby the USB terminal piece is received in an inner space of the cover or exposed outside the cover.

'544 patent claim 1 (emphasis added); *see also* J.A. 116 (Certificate of Correction).

## II

On August 22, 2014, CATR Co. ("CATR")[1] sued Kingston in the Central District of California, alleging infringement of the '544 patent. Kingston sought inter partes review ("IPR") of the patent, and the district court stayed the litigation pending the outcome of that proceeding. A

---

[1]    Pavo Solutions, LLC ("Pavo") was substituted for CATR on October 3, 2016.

subset of the '544 patent's claims survived IPR, the district court lifted the stay, and the case continued.

In its claim-construction order, the district court agreed with Pavo that the claim phrase "pivoting the case with respect to the flash memory main body" included a clerical error, and it judicially corrected the language by replacing the word "case" with the word "cover" so that the claim read "pivoting the *cover* with respect to the flash memory main body." *Pavo Sols., LLC v. Kingston Tech. Co.*, Case No. SACV 14-1352, 2018 WL 5099486, at *4 (C.D. Cal. Sept. 10, 2018) ("*Claim Construction Order*") (emphasis added). The district court determined that the error was "evident from the face of the patent" because "[t]he case is described as a *part* of the main body, so it is not possible for it to rotate with respect to the body." *Id.* (emphasis in original). The correction was not subject to reasonable debate, in the district court's view, because Kingston's proposed alternative construction—replacing "flash memory main body" with "cover" so that the claim reads "pivoting the case with respect to the cover"—resulted in the same claim scope. *Id.* at *3. Finally, the district court noted that the prosecution history was consistent with the correction. *Id.* at *4. Though Kingston had submitted and relied on expert testimony in support of its arguments that the correction was not appropriate, the court discounted the testimony because it was not consistent with the intrinsic record. *Id.*

The case proceeded to trial, where Pavo's damages expert, Mr. Jim Bergman, presented a profit-based model of reasonable-royalty damages. He relied on an earlier settlement agreement between CATR and IPMedia, a USB-drive manufacturer, in which IPMedia agreed to pay a 1-cent royalty for future sales of its product and represented that 1 cent was "approximately Twenty-Five Percent (25%) of the profits recognized by IPMedia from sales" of its product. J.A. 1649, 1652. Accounting for differences between IPMedia and Kingston—the former a smaller enterprise

with lower profitability—Mr. Bergman concluded that Pavo and Kingston would have agreed to a profit split of 18.75 percent, which amounted to 40 cents per unit.

Before trial, Kingston sought to exclude Mr. Bergman's testimony, arguing that his reliance on the 25-percent representation was incorrect and speculative. The district court denied the motion, observing that Mr. Bergman relied only on express terms in the IPMedia license, so his analysis did not involve any impermissible speculation. *See Pavo Sols. LLC v. Kingston Tech. Co.*, Case No. SACV 14-1352, 2019 WL 8138163, at *18 (C.D. Cal. Nov. 20, 2019).

At the conclusion of trial, the jury returned a verdict that Kingston had willfully infringed claims 1, 4, and 24 of the '544 patent and awarded Pavo a 20-cent reasonable royalty. Following trial, Kingston moved for judgment as a matter of law, which the district court denied. Kingston appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Kingston makes five arguments on appeal, three of which we substantively address. First, Kingston argues that the district court should not have judicially corrected the phrase "pivoting the case with respect to the flash memory main body" because the language does not contain an error and, even if it does, the error is neither minor nor obvious. Second, Kingston argues that it could not have formed the intent to infringe necessary to support a willful-infringement verdict because it reasonably relied on the fact that it does not infringe the '544 patent's claims as originally written. Third, Kingston argues that the district court should not have permitted Mr. Bergman to rely on the 25-percent-profit representation in the IPMedia license because that provision is a non-payment term unrelated to the royalties CATR received. We address each of these arguments in turn, but we do not address Kingston's other

two arguments—(1) that the district court issued a curative jury instruction that contradicted the parties' agreed construction for "pair of parallel plate members," and (2) that the district court permitted Pavo to prejudice the jury by referring to Kingston's total revenue for sales of the accused products—because, for the reasons discussed below, we conclude that Kingston forfeited them.

I

We first address Kingston's argument that the district court should not have judicially corrected "pivoting the case with respect to the flash memory main body." We review a district court's claim construction de novo, *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022), and any subsidiary fact findings about extrinsic evidence for clear error, *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928, 932–33 (Fed. Cir. 2019). We conclude that the district court appropriately corrected an obvious minor clerical error in the claims.

A district court may correct "obvious minor typographical and clerical errors in patents." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). Correction is appropriate "only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Id.* at 1354. The error must be "evident from the face of the patent," *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005), and the determination "must be made from the point of view of one skilled in the art," *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1353 (Fed. Cir. 2009). In deciding whether a particular correction is appropriate, the court "must consider how a potential correction would impact the scope of a claim and if the inventor is entitled to the resulting claim scope based on the written description of the

patent." *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1359 (Fed. Cir. 2011).

## A

We begin by addressing whether the claim language contains an obvious minor typographical or clerical error. It does. The reference to "case" in the phrase "pivoting the case with respect to the flash memory main body" in both claims 1 and 24 is a mistake. The error is clear from the full context of the claim language. A first clause describes the physical structure of the device, including the "for pivoting" language, and a second clause describes the pivoting motion itself:

> *the parallel plate members* [of the cover] having at least one hinge hole receiving the hinge protuberance *on the case* for pivoting the case with respect to the flash memory main body, *whereby the USB terminal piece is received in an inner space of the cover or exposed outside the cover.*

*See* '544 patent claim 1 (emphasis added). In other words, claim 1 recites structural elements—hinge holes on the cover receiving hinge protuberances on the case—that result in a configuration in which the cover pivots with respect to the case. Claim 24 includes virtually identical language. *See id.* at claim 24 ("the parallel plate members having at least one hinge element which cooperates with the hinge element on the case for pivoting the case with respect to the flash memory main body, whereby the USB terminal piece is received in an inner space of the cover or exposed outside the cover"). The "for pivoting" term immediately follows the language requiring structure resulting in a pivoting cooperation between the cover and the case, confirming that the reference to the "case" pivoting with respect to the "flash memory main body" (which includes the case) is a clerical error. The "whereby" clause that follows and elaborates on the "for pivoting" term in both claims forecloses any argument to the contrary: by

explaining that "the USB terminal piece is received in an inner space of the cover or exposed outside the cover," the claims describe a movement that is only possible if the *cover* pivots with respect to the flash memory main body.

That both claim 1 and claim 24 require that the flash memory main body "includ[e]" a case also confirms the clerical error. '544 patent col. 4 ll. 43–44, col. 6 l. 49. This language suggests—if not requires—that the two structural components be fixed with respect to each other. Because the claim language alone shows that the reference to the case in the "for pivoting" language should have been to the cover, we agree with the district court that claims 1 and 24 of the '544 patent contain an obvious minor clerical error.

Kingston suggests that the error cannot be minor because replacing one structural element with another is "a substantial alteration of the claimed structure." Appellant's Br. 19. First, this argument ignores the language in each claim that, even without the "for pivoting" term, requires a structure in which the cover pivots with respect to the flash memory main body. Rather than describe a different structure, the language as written doesn't make sense. Second, even if Kingston were right that the correction changes the structure described in the corrected claim, nothing in our case law precludes district courts from correcting obvious minor errors that alter the claimed structure. In *Ultimax*, for example, we altered a chemical formula by inserting a comma because a skilled artisan would have known that the omission of the comma was a mistake. 587 F.3d at 1352–53. And in *Lemelson v. General Mills, Inc.*, we inserted the word "toy" into a preamble reciting a "trackway" so that it read "trackway toy." *See* 968 F.2d 1202, 1203 (Fed. Cir. 1992). The Supreme Court has likewise permitted structural alterations via judicial correction: in *I.T.S. Rubber Co. v. Essex Rubber Co.*, the Court corrected "upper edge" to "rear upper edge." *See* 272 U.S. 429, 441–43 (1926). These cases confirm that judicial correction may result in structural alterations. They

also undermine another of Kingston's arguments: that the error is not evident on the face of the patent because the claim is linguistically correct. As this case law suggests, courts are not limited to correcting errors that result in linguistic incorrectness.

Kingston also argues that the correction cannot be minor because it broadens the claims. That is incorrect. The structural elements recited in each claim already require that the cover pivot with respect to the flash memory main body.

Finally, Kingston suggests that our decision in *Chef America, Inc. v. Lamb-Weston, Inc.* precludes judicial correction here. Appellant's Br. 24 (citing 358 F.3d 1371, 1374 (Fed. Cir. 2004)). In *Chef America*, we considered a patent directed to a process for making dough products. 358 F.3d at 1372. Both independent claims at issue included the step of "heating the resulting batter-coated dough to a temperature in the range of about 400° F. to 850° F." *Id.* The patent owner sought to interpret this language as if it read "heating the . . . dough *at* a temperature in the range of" about 400° F to 850° F because it was undisputed that, if one performed the steps of the claim as written and heated the dough to 400° F or higher, the dough "would be burned to a crisp." *Id.* at 1373–74 (emphasis added). We declined to construe the claim contrary to its plain language, observing that the language was clear and unmistakable and that we "may not redraft claims, whether to make them operable or to sustain their validity." *Id.* at 1374. Here, Kingston argues that, if the district court correctly concluded that the language of the '544 patent's claims precluded the case from pivoting with respect to the flash memory main body, that structural impossibility is not sufficient to justify judicial correction. But this case is unlike *Chef America* for several reasons. First, as discussed, the structural limitations of the claims show that the reference to "case" was an error because they describe a cover that necessarily pivots with respect to the flash memory main body, so it is

PAVO SOLUTIONS LLC v.                    11
KINGSTON TECHNOLOGY COMPANY, INC.

not structural impossibility alone that justifies correction. Second, the claim as written facially did not make sense (i.e., the case pivoting with respect to a component of which it forms a part) rather than describe a realistic but perhaps undesirable result, i.e., cooking dough to 400° F and burning it. Third, the specification of the '544 patent confirms the error in the claims by exclusively describing a flash memory device with a pivoting cover, whereas in *Chef America*, nothing in the specification or the prosecution history suggested that the patentee meant for the dough to be cooked "at" 400° F rather than "to" 400° F. *See id.* at 1374–75. Fourth, in *Chef America* we pointed out that the "patentees made no attempt to have . . . an error corrected, . . . by action of the district court." *Id.* at 1375. Accordingly, *Chef America* does not preclude the result we reach here.

Finally, throughout its briefing on appeal and in the district court, Kingston relied on the unrebutted testimony of an expert, Timothy Fletcher, who opined that the error in the claims was not minor or obvious. The district court summarily dismissed Mr. Fletcher's testimony. *See Claim Construction Order*, 2018 WL 5099486, at *4 (characterizing Mr. Fletcher's testimony as "inconsistent with the drawings presented in the patent and the other language of the patent"). The district court was correct to do so: Mr. Fletcher admitted that he had considered the "for pivoting" language in isolation, not in context as he should have. *See* J.A. 7465–66; *CBT Flint*, 654 F.3d at 1359. Accordingly, none of Mr. Fletcher's opinions alter our analysis.

We therefore conclude that "pivoting the case with respect to the flash memory main body" in claims 1 and 24 of the '544 patent contains an obvious minor clerical error.

B

Our next step in the judicial-correction analysis is to determine whether the correction is "subject to reasonable debate based on consideration of the claim language and the specification." *Novo Indus.*, 350 F.3d at 1354. The

district court concluded that the correction was not subject to reasonable debate because both proposed corrections would result in the same claim scope. *Claim Construction Order*, 2018 WL 5099486, at \*3. We agree.

Our decision in *CBT Flint* is instructive. 654 F.3d at 1355. There, we considered a claim that included the limitation "a computer in communication with a network, the computer being programmed to *detect analyze* the electronic mail communication sent by the sending party to determine whether or not the sending party is an authorized sending party or an unauthorized sending party." *Id.* (emphasis added). We identified three possible corrections: (1) delete the word "detect," (2) delete the word "analyze," or (3) insert "and" between "detect" and "analyze." *Id.* at 1359. "Because each of the three proposed reasonable interpretations would result in the same claim scope," we concluded that "a person of skill in the art would readily know that the meaning of the claim requires insertion of the word 'and' between the words 'detect' and 'analyze.'" *Id.* One "was not required to guess which meaning was intended in order to make sense out of the patent claim." *Id.* at 1360.

The same principles apply here. Kingston suggests that an alternative correction would be to replace "flash memory main body" with "cover" so that the phrase reads "pivoting the case with respect to the cover." *See* Appellant's Br. 26–27. But the case is a part of the flash memory main body. *See* '544 patent claim 1 ("a flash memory main body including a rectangular shaped case"), *see also id.* at claim 24. So anything that pivots with respect to the case also pivots with respect to the flash memory main body. Functionally speaking, then, Kingston's alternative correction would just reverse the order in which the structural components appear in the claim: "pivoting the cover with respect to the flash memory main body" versus "pivoting the flash memory main body with respect to the cover." In either case, the flash memory main body and the cover

pivot with respect to each other, so the two proposed corrections describe the same action. Judicial correction is "not in any real sense, a re-making of the claim; but is merely giving to it the meaning which was intended by the applicant and understood by the examiner." *Essex*, 272 U.S. at 443. Here, because both corrections result in the same action, the meaning intended by the applicant is clear. It was, therefore, appropriate for the district court to conclude that the correction was not subject to reasonable debate.

Kingston argues that the two corrections do not result in identical claim scope because the case and the flash memory main body are different components that need not be affixed together, meaning that pivoting the cover with respect to one does not necessarily mean that it pivots with respect to the other. We disagree. "Any correction of a claim has to be consistent with the invention 'described in the specification and drawings of the original patent.'" *CBT Flint*, 654 F.3d at 1359 (quoting *Essex*, 272 U.S. at 444). The specification of the '544 patent describes "a flash memory main body *including* a rectangular shaped case." '544 patent col. 2 ll. 31–32 (emphasis added). The patent then explains that "[a] hinge protuberance 33 for functioning as a rotation shaft of a cover 40 is provided on an appropriate position of a front side and a rear side *of the case* 31," *id.* at col. 3 ll. 20–23 (emphasis added), before later stating that "the cover has a circular hinge hole 41 for receiving the hinge protuberance 33 formed *on the flash memory main body* 30," *id.* at col. 3 ll. 33–36 (emphasis added). In other words, the specification equates the case to the flash memory main body for purposes of describing the hinge protuberance 33. And the drawings consistently depict a case and a flash memory main body that are integrated with one another, meaning that they cannot pivot or otherwise move with respect to each other. *See, e.g., id.* at Figs. 2–4. Because the specification consistently and exclusively depicts embodiments in which the case and the

flash memory main body are integrated, Kingston is wrong to suggest otherwise.  Kingston's alternative correction does not result in different claim scope.

We therefore conclude that the correction is not subject to reasonable debate.

C

We finally consider whether the prosecution history "suggest[s] a different interpretation of the claims." *Novo Indus.*, 350 F.3d at 1354.  The district court concluded that it does not, and we agree. *See Claim Construction Order*, 2018 WL 5099486, at \*4.  Despite the error's introduction early in prosecution, both the applicant and the examiner consistently characterized the claims as describing "pivoting the case [] within the cover," J.A. 8133, "allowing the cover to pivot," J.A. 7143, and "a cover . . . having a hinge element functioning with the case," J.A. 7159.  In describing the reasons for allowance, the examiner stated that "[t]he prior art does not show a hinge element of the parallel plate members cooperating with a hinge element on the case." J.A. 7048.  Similarly, the Patent Trial and Appeal Board ("Board") and this court both recognized the pivoting-cover nature of the invention.  The Board described the '544 patent as "directed to a cover that rotates with respect to a case." J.A. 7057–58.  And, in reviewing the Board's final written decision, we described the claimed invention as having a "rotating cover that is not separated from the memory device body when its USB port is in use." *Pavo Sols. LLC v. Kingston Tech. Co.*, 711 F. App'x 1020, 1022 (Fed. Cir. 2017).  These descriptions confirm that each reviewing body—the examiner, the Board, and this court—understood the nature and scope of the invention consistently with correcting "case" to "cover." No other reasonable interpretation reveals itself from the prosecution history.

Kingston, however, argues that the prosecution history suggests correction is inappropriate because, during the IPR, Pavo asked the Board to make the same correction,

and the Board denied that request.  But first, that denial does not suggest that a different correction is appropriate, which is the question at issue here.  Second, the Board denied Pavo's correction request on procedural grounds: Pavo had already filed preliminary responses in both IPRs, and the oral hearing was less than two months away.  Under those circumstances, the Board concluded that "[p]otential changes to the claims at this stage could lead to a moving target that is unfair to [Kingston]."  J.A. 1199.  Kingston seizes upon this "moving target" language to argue that the Board recognized that Pavo's requested correction would substantively change the claims.  But the Board's language does not support that conclusion.  Rather, the Board's observation that "[p]otential" changes "could" result in a moving target shows that the Board did not consider the substance of Pavo's request.  *See id.*  Any attempt to infer the Board's views on the correction is conjecture.

Accordingly, we conclude that the prosecution history does not suggest a different interpretation of the claims.

### D

Having determined that the claim language contains an obvious clerical error, that the correction is not subject to reasonable debate, and that the prosecution history does not suggest a different interpretation, we affirm the district court's construction that "pivoting the case with respect to the flash memory main body" means "pivoting the cover with respect to the flash memory main body."

### II

Kingston next argues that the jury's willful-infringement verdict must be set aside.  Kingston submits that it could not have formed the requisite intent to support a willfulness finding because it did not infringe the claims as originally written and because it could not have anticipated that a court would later correct the claims.  We hold,

however, that reliance on an obvious minor clerical error in the claim language is not a defense to willful infringement.

Kingston's argument appears to hinge on its belief that the district court "change[d] the metes and bounds of the patent," Appellant's Br. 35, and "enacted a major change to the claim language," Reply Br. 16. But judicial correction does not re-make the claim; rather, it gives effect to its obvious meaning. *See Essex*, 272 U.S. at 443. An obvious minor clerical error, by definition, does not mask that meaning, so Kingston cannot hide behind the error to escape the jury's verdict.

Kingston suggests that upholding the willful-infringement verdict amounts to calling Kingston reckless for relying on the Board's rejection of Pavo's correction request during the IPR. But, as we explained above, the Board did not consider the substance of Pavo's correction request, so there was nothing for Kingston to rely on. More importantly, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). The Board's inaction, which came later, is irrelevant to the issue of Kingston's intent to infringe the '544 patent. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999) ("The proper time to assess willfulness is at the time the infringer received notice . . ., making the relevance of later developments . . . questionable at best.").

We affirm the district court's judgment that Kingston willfully infringed the '544 patent.

## III

Kingston lastly argues that the district court should have excluded Mr. Bergman's damages testimony because he relied on a non-payment term in the IPMedia license. We conclude, however, that the district court did not abuse

its discretion when it declined to exclude Mr. Bergman's testimony.

We review a district court's denial of judgment as a matter of law ("JMOL") under the law of the regional circuit. *Apple Inc.*, 25 F.4th at 969. The Ninth Circuit reviews denial of JMOL de novo. *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016). A district court's decision concerning the methodology for calculating damages is one we review for an abuse of discretion. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1310 (Fed. Cir. 2009). We review a jury's determination of the amount of damages for substantial evidence. *Id.* "A jury's damages award must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020) (cleaned up).

At trial, Pavo presented a reasonable-royalty theory of damages under a hypothetical-negotiation framework and proposed a 40-cent-per-unit royalty rate. Mr. Bergman used the negotiations and agreement between CATR and IPMedia as his starting point; both parties' experts agreed that the IPMedia license was a comparable license. *See* J.A. 20605, 21043. That license included a 1-cent running royalty for sales of the licensed product. *See* J.A. 1649. The license also included a representation from IPMedia to CATR that "the amount of One U.S. Cent ($0.01 USD) per unit is approximately equal to Twenty Five Percent (25%) of IPMedia's profits recognized from the sale of a Covered Product, excluding profits attributable to any upgrades or value-added features or services (*i.e.*, higher memory capacity, custom printing, software preloads, *etc.*)." J.A. 1652. Based on those two provisions, Mr. Bergman opined that a profit-split model was appropriate to use as a factor to determine damages; differences in profitability and business models between IPMedia and Kingston led Mr. Bergman to reduce the profit split from 25 percent to

18.75 percent.  He applied that figure to Kingston's profits from the sale of the accused USB device and concluded that the appropriate royalty rate was 40 cents per unit.

Kingston first argues that Mr. Bergman's methodology is unsound because it relies not on what CATR actually received but, instead, on what Kingston characterizes as a non-binding non-payment term, i.e., the 25-percent-of-profit representation.  But the IPMedia agreement itself says that the 1-cent royalty that CATR received represented 25 percent of IPMedia's profit for sales of its product, so that representation provided context for the royalty and was not a separate payment provision.  Under the circumstances, Mr. Bergman's testimony is not unduly speculative, and the district court did not abuse its discretion in declining to exclude it.  Mr. Bergman's analysis then accounted for the differences in the economic circumstances of the contracting parties, which is exactly what our case law requires.  *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014).  The jury also heard testimony from Russel Chatskis, IPMedia's president, explaining the structure of the IPMedia license.  Based on that context, "[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject," and that is exactly what it did.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010).  Kingston relies on *Wordtech Systems, Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010), for the proposition that we do not permit the use of non-payment terms in comparable licenses, but that case is inapplicable.  There, we rejected the use of a punitive-damages provision to support a damages award.  609 F.3d at 1320.  Here, however, the provision that Kingston objects to contains a representation about and provides greater context for the royalty; it is not a separate term triggered only under certain circumstances like the one at issue in *Wordtech*.

Kingston next suggests that Mr. Bergman failed to apportion for non-infringing features.  Kingston argues that,

because the undisputed evidence at trial shows that it paid just 35 cents in casing costs for the accused products, which is less than the 40-cent royalty Mr. Bergman proposed, Mr. Bergman necessarily failed to account for the value of the infringing features. We disagree. First, the costs to Kingston for the materials are not the same as the value of the patented feature, so Kingston's argument compares apples to oranges. Second, Mr. Bergman's analysis correctly apportioned for non-infringing features.

"[T]he patentee must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features . . . ." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (cleaned up). "[W]here multi-component products are involved, the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). But "when a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required." *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020). "That is because a damages theory that is dependent on a comparable license (or a comparable negotiation) may in some cases have 'built-in apportionment.'" *Id.* "Built-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Id.* at 1041.

Here, both parties agree that the IPMedia license was comparable. That license granted rights in the '544 patent, and it plainly reflected the value that the contracting parties settled on for the patent. As the starting point for Mr. Bergman's analysis, it provided sufficient evidence of "already built[-]in apportionment." *See Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295,

1303 (Fed. Cir. 2015); *see also* J.A. 1612–13.  Mr. Bergman's analysis correctly apportioned for non-infringing features, and the district court did not abuse its discretion by declining to exclude it.

We therefore reject Kingston's challenges to Mr. Bergman's damages testimony and affirm the jury's damages award.

IV

We conclude that Kingston has forfeited its two remaining arguments: that the district court improperly reconstrued the term "pair of parallel plate members" by issuing a curative instruction to the jury during trial and that Kingston was prejudiced by Pavo's disclosure to the jury of Kingston's total revenue for sales of the accused product.

"[F]orfeiture is the failure to make the timely assertion of a right."  *United States v. Olano*, 507 U.S. 725, 733 (1993).  This court has "regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."  *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below.").

As we explain below, Kingston failed to raise either argument to the district court in post-trial motions, so it failed to preserve the issues for appeal.

A

Because Kingston never sought JMOL or a new trial on the grounds that the district court's curative instruction improperly reconstrued a claim limitation, it forfeited the right to seek a new trial on that basis on appeal.

Before the parties presented opening statements to the jury at trial, the district court barred a Kingston non-infringement argument as late-disclosed. Specifically, Kingston asserted that the accused product did not include a "pair of parallel plate members" because its cover was a single piece of metal, but it had not disclosed that position during discovery. During its cross-examination of Pavo's infringement expert, however, Kingston asked the expert questions directed to the single-piece-of-metal argument. Finding that Kingston had violated its exclusionary order, the district court issued the following curative instruction to the jury:

> There is no contention in this litigation that the limitation of a pair of parallel plate members is not met if the pair of parallel plate members is formed by a single piece of metal. You should, therefore, disregard any evidence or argument suggesting that a single piece of metal cannot form a pair of parallel plate members.

J.A. 21151. After the district court informed the parties that it would issue the instruction, Kingston's trial counsel suggested that Pavo's proposed language "would take out the entire limitation including the parallel." J.A. 20555. The district court disagreed and suggested that the confusion arose because of a comma that the district court would remove from the instruction. J.A. 20555–56. In response, Kingston's counsel said only "we maintain all of our objections to that instruction." J.A. 20556.

Kingston did not move for a new trial, nor did it raise the curative-instruction issue in its motion for JMOL. Instead, Kingston "reserve[d] its right to move for [JMOL] on various limitations that the [c]ourt relieved Pavo of its burden of proof on, including" the pair of parallel plate members limitations. *See* J.A. 1474. Kingston did not elaborate on its arguments, nor did it file a subsequent motion for JMOL or a motion for a new trial that raised the district

court's curative instruction or suggested that the district court had improperly reconstrued the term.

Kingston argues that it preserved the argument for appeal by objecting to the instruction at trial and reserving its rights to challenge the court's construction in its JMOL motion. But, first, Kingston failed to substantively object to the jury instruction—it said only "we maintain all of our objections to that instruction" without elaborating on what those objections were. *See* J.A. 20556. Such a generalized statement, standing alone, fails to preserve any specific objection, particularly when the record before us indicates that the extent of Kingston's argument against the instruction was that it was unnecessary in the first instance.[2] *See* J.A. 1435 (Kingston maintaining that its excluded non-infringement argument was based upon the words of the parties' agreed construction for "pair of parallel plate members"); *see also* Reply Br. 17. Nothing in the record indicates that Kingston ever objected to the final language of the curative instruction, suggested that it amounted to an affirmative reconstruction of the claim term, or offered alternative language for the instruction, nor does Kingston argue that it did.

Second, Kingston's attempt in its JMOL motion to "reserve[] its rights" to challenge the instruction at some unknown later date is insufficient to preserve the argument for an appeal. *See* J.A. 1474. When a party fails to seek a

---

[2]   Kingston's statement at trial that the instruction "would take out the entire limitation including the parallel" was directed to Pavo's proposal that included what the district court characterized as a confusing comma. *See* J.A. 20555–56. By failing to reiterate the argument in response to the district court's version of the instruction, Kingston forfeited it. In any event, Kingston does not now argue that this statement preserved any specific objection to the language of the instruction.

new trial before the district court, it forfeits its right to do so on appeal. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006). That is what Kingston did here. The Federal Rules of Civil Procedure limit the time for parties to file post-judgment motions. *See* Fed. R. Civ. P. 50(b), (d); Fed. R. Civ. P. 59(b). A party cannot unilaterally extend that time by "reserving its rights," nor does such a reservation avoid the *Unitherm* rule. Kingston never moved for a new trial at all, let alone on the basis that the district court's curative jury instruction reconstrued the "pair of parallel plate members" claim term. Its failure to move for a new trial forfeits the argument on appeal. *Unitherm*, 546 U.S. at 404.

B

Similarly, Kingston never sought a new trial on the grounds that Pavo prejudiced the jury by disclosing Kingston's total revenue. It therefore forfeited its right to make that same argument on appeal.

Before jury selection, Kingston objected to Pavo's use of an opening demonstrative slide that depicted Kingston's total product revenue. Kingston argued that Pavo should be precluded from disclosing total product revenue to the jury because it violated the entire market value rule and was inherently unduly prejudicial. Pavo argued that product revenue was relevant to the commercial success of the accused product as compared to alleged non-infringing alternatives. The district court precluded Pavo from using the slide in its opening statement but stated that it was "not limiting [Pavo] from making statements about the total accused product revenue at this point, but [was] going to take a look at it." J.A. 20085. The parties later submitted competing trial briefs on the issue and reiterated their respective positions. The district court ultimately excluded an underlying exhibit but permitted Mr. Bergman to testify generally to total product revenue. All told, Pavo referenced Kingston's total sales revenue to the jury three

times: once in its opening statement, once during Mr. Bergman's direct examination, and once during its cross-examination of Kingston's damages expert. Kingston never sought a new trial on the grounds that Pavo used total product revenue for an improper purpose and thereby unduly prejudiced the jury.

Kingston's failure to move the district court for a new trial on this ground, by itself, forfeits the argument on appeal. *Unitherm*, 546 U.S. at 404. Kingston's arguments on appeal demonstrate why. Kingston asserts that Pavo did not use its sales revenue for a proper purpose and contests Pavo's assertion that Pavo relied on total product revenue to refute Kingston's arguments regarding non-infringing alternatives. *See, e.g.*, Reply Br. 21. We, as an appellate body, cannot properly evaluate those arguments in the first instance. The trial court, having just presided over several days of testimony, would have been better suited to determine whether Kingston's assertions of prejudice have merit, and it would have had the benefit of the full trial record, which we lack, to do so. Since Kingston did not make those arguments to the district court, we will not now consider them.

## CONCLUSION

We have considered the parties' remaining arguments but find them unpersuasive. For the above reasons, we affirm the judgment of the district court.

**AFFIRMED**